**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NERIUM INTERNATIONAL, LLC N/K/A NEORA, LLC AND JEFFREY OLSON, | ) ) ) ) ) | Case No. 1:19-cv-7189 |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Date: January 6, 2019 Time: 9:45am Judge: Hon. Sara J. Ellis |
| FEDERAL TRADE COMMISSION, | ) ) | |
| Defendant. | ) ) | |

**FTC'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION OR, IN THE ALTERNATIVE,
FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

Introduction ..................................................................................................................................1

Background ..................................................................................................................................2

A. The FTC Act And The FTC Enforcement Process ................................................................2

B. Procedural History Of This Case............................................................................................2

Argument ......................................................................................................................................3

I. This Case Must Be Dismissed Because Plaintiffs Do Not Challenge Any
Final Agency Action And They Have Another Adequate Remedy In Court..........................3

    A. The APA Is Plaintiffs' Only Route To Judicial Review ................................................4

    B. Plaintiffs' Claims Fail The APA Prerequisites For Judicial Review .............................6

        1. Plaintiffs do not challenge any "final" FTC action.....................................................6

        2. Plaintiffs have another remedy for their claims........................................................10

II. Plaintiffs' Claims For Pre-Enforcement Review Are Not Ripe For Judicial
Intervention............................................................................................................................11

    A. The Issues Raised Here Are Not Fit For Judicial Decision. ........................................12

    B. Raising Their Claims In New Jersey Will Cause Plaintiffs No
       Hardship........................................................................................................................12

III. In Any Event, The Court Should Decline To Exercise Declaratory Judgment
Jurisdiction, Which Is Discretionary. ....................................................................................13

Conclusion .................................................................................................................................15

**INTRODUCTION**

"[D]efendants must not be allowed to turn every case in which there is a defense into two cases." *Buntrock v. SEC*, 347 F.3d 995, 997 (7th Cir. 2003). This simple maxim explains why plaintiffs' suit must be dismissed.

Plaintiffs are a multi-level marketing company and its founder and CEO. The FTC has been investigating them for violations of the FTC Act, and now has filed an enforcement action against them in the District of New Jersey, where two co-defendants are located. But before that filing, plaintiffs preemptively sued, asking this Court to short-circuit the ordinary enforcement process and declare that their practices do not violate the law.

That request is barred by decades of precedent from the Supreme Court, the Seventh Circuit, and this Court rejecting such attempts to secure preemptive immunity from prosecution. Plaintiffs' only route to judicial review is through the Administrative Procedure Act; the Declaratory Judgment Act creates no cause of action against the government. But plaintiffs fail to meet both of the APA's prerequisites to suit: there is no final agency action to challenge, and plaintiffs have an adequate remedy in the New Jersey enforcement action. Indeed, the Supreme Court recognized decades ago that litigants may not turn "prosecutor into defendant" by filing cases like this one. *FTC v. Standard Oil*, 449 U.S. 232, 242-43 (1980).

Plaintiffs' claims also fail because they are not ripe for judicial consideration. They seek a declaration that, among other things, Nerium "is not" and "has not been a pyramid scheme." Compl. ¶ 101 (3)-(4). These factbound questions, the very ones at issue in the New Jersey case, are plainly unfit for a separate declaratory ruling. Plaintiffs identify no cognizable hardship that will result if they must litigate their positions there rather than here.

Even if the Court had jurisdiction, it should decline to hear this case as a matter of discretion. Plaintiffs can make all their arguments and secure the same ultimate relief they seek in the New Jersey proceeding. There is simply no need for duplicate litigation. Worse, this case would not resolve the entire controversy because the FTC's enforcement suit alleges misconduct not raised here, including false advertising and other deceptive conduct. Moreover, plaintiffs admit that they filed this suit to avoid the FTC's chosen forum of New Jersey – the very type of "procedural fencing" that abuses the Declaratory Judgment Act.

## BACKGROUND

### A. The FTC Act And The FTC Enforcement Process

Section 5 of the FTC Act prohibits "unfair methods of competition" and "unfair or deceptive acts or practices" in or affecting commerce. 15 U.S.C. § 45(a). Section 12 of the FTC Act likewise prohibits false advertisements for food, drugs, devices, services, or cosmetics in or affecting commerce. 15 U.S.C. § 52. Congress empowered the FTC to enforce these laws, in its discretion, either through administrative adjudication, 15 U.S.C. § 45(a) & (b), or enforcement lawsuits in federal district courts, *id*. § 53(b).

### B. Procedural History Of This Case

Plaintiffs are an international multi-level marketing company ("MLM"), Nerium International, LLC n/k/a Neora LLC ("Nerium") and its CEO, Jeffrey Olson. They sell dietary supplements and skin care products using a network of "brand partners." The FTC has been investigating the company for violations of the FTC Act, and informed it on October 29, 2019 that the FTC planned to file an enforcement lawsuit. *See* Compl. ¶¶ 17-20.

Instead of simply defending themselves in the FTC's enforcement suit, plaintiffs filed a 60-page complaint in this Court on November 1, 2019, asking for sweeping declaratory and

injunctive relief. *Id.* ¶ 101. They seek a declaration that Nerium is not an unlawful pyramid scheme, *id.* ¶ 101 (3), (4), and ask for a ruling that the FTC's interpretation of the laws it enforces, including relating to pyramid schemes, is wrong, *e.g.*, *id.* ¶¶ 2, 31, 68-75. They ask the Court to require the FTC to use certain analytical methods in evaluating the legality of MLM companies, and to prohibit it from using other methods. *Id.* ¶¶ 97 (4)-(7). They further seek to establish safe harbors for MLMs, *id.* ¶ 97 (8), ¶ 101 (10), (11), and to broadly forbid the FTC from "enforcing its current interpretation of the FTC Act regarding pyramid schemes," *id.* ¶ 99.

Hours later, the FTC filed its enforcement case in the District of New Jersey against Nerium, Olson, and two companies who helped market a Nerium product. FTC Compl. ¶¶ 6-9, *FTC v. Neora*, No. 19-19699 (D.N.J. Nov. 1, 2019), ECF No. 1. Two co-defendants are based in that district. *See id.* ¶¶ 7-8. The suit alleges that Nerium and Olson violated Section 5 of the FTC Act by operating a pyramid scheme – a deceptive business practice – and by falsely claiming that consumers who become Nerium salespeople are likely to earn substantial income. *Id.* ¶¶ 132-35. In addition, the FTC alleges that all defendants violated Sections 5 and 12 of the FTC Act by misrepresenting the efficacy and benefits of certain products and by providing the means and instrumentalities for deceptive practices. *Id.* ¶ 137-44.

## ARGUMENT

### I. THIS CASE MUST BE DISMISSED BECAUSE PLAINTIFFS DO NOT CHALLENGE ANY FINAL AGENCY ACTION AND THEY HAVE ANOTHER ADEQUATE REMEDY IN COURT

The Court may hear this case only if plaintiffs have a cause of action under the Administrative Procedure Act (APA). That, in turn, requires "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Plaintiffs fail both parts of that test.

3

They challenge no final agency action, and they have an obviously adequate remedy in the New Jersey enforcement action. The case therefore must be dismissed.

### A. The APA Is Plaintiffs' Only Route To Judicial Review

Federal district courts are courts of limited jurisdiction; they "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It therefore is "to be presumed that a cause lies outside this limited jurisdiction," and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*; *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 679 (7th Cir. 2006).

Plaintiffs assert that the Court has jurisdiction under the general federal question statute, 28 U.S.C. § 1331, and purport to assert claims arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2022, and Section 5 of the FTC Act. Compl. ¶ 41. None of these statutes gives plaintiffs a cause of action over which this Court has jurisdiction. As we explain, the only statute that could possibly give plaintiffs a route to the relief they seek is the APA, 5 U.S.C. § 701 *et seq.*, a statute they do not invoke, cannot satisfy, and cannot avoid through artful pleading. Because they fail the APA's prerequisites to judicial review, their suit must be dismissed.

The Declaratory Judgment Act "is not an independent grant of jurisdiction, rather jurisdiction must be predicated on some other statute." *Rueth v. EPA*, 13 F.3d 227, 231 (7th Cir. 1993) (affirming dismissal of suit); *see also Med. Assurance Co. v. Hellman*, 610 F.3d 371, 377-78 (7th Cir. 2010) (describing the Act as a "relatively modest . . . procedural innovation"). It merely provides a remedy for a complaint over which a court otherwise has jurisdiction.

Similarly, Section 1331 grants district courts jurisdiction over "civil actions arising under the . . . laws . . . of the United States," 28 U.S.C. § 1331, but the plaintiff must invoke a separate law – under which the case arises – that grants a cause of action. *See Merrell Dow Pharm. Inc. v.*

4

*Thompson*, 478 U.S. 804, 808-09 (1986). The FTC Act – the only other statute plaintiffs cite for jurisdiction – does not provide private plaintiffs with a cause of action. That Act does not allow private remedies, *see* 15 U.S.C. § 45(m)(1)(A), and "[n]o district court action for a declaratory judgment is authorized by [it]." *Floersheim v. Engman*, 494 F.2d 949, 954 (D.C. Cir. 1973).

The only possible source of a cause of action against the FTC here is the APA, which plaintiffs do not invoke but cannot avoid. *See, e.g., Am. Fin. Benefits Ctr. v. FTC* ("*American Financial*"), No. 17-04817, 2018 U.S. Dist. LEXIS 107004, at *26 (N.D. Cal. May 29, 2018) (holding that a party cannot avoid APA requirements by artful pleading). As the Seventh Circuit has explained, when an agency is sued over administrative action, "[t]he jurisdiction of the federal courts . . . is codified in the [APA]." *General Finance Corp. v. FTC*, 700 F.2d 366, 372 (7th Cir. 1983). Parties "may not bypass" the review method Congress has specified – in the APA or in another statute – "simply by suing the agency in federal district court under 1331." *Id.*

Thus, in *General Finance*, the Seventh Circuit held that if "a review proceeding is not authorized by" Section 704 of the APA, then "general jurisdictional statutes such as [Sections] 1331 and 1337 cannot be used to confer jurisdiction." *Id*. at 372. Nor does the Declaratory Judgment Act allow parties to escape the strictures of the APA, for it "does not afford an independent basis for jurisdiction." *Cont'l Bank & Trust Co. v. Martin*, 303 F.2d 214, 215 (D.C. Cir. 1962). Plaintiffs' sole means of challenging administrative action is the APA, in which Congress specified the conditions under which agencies are subject to suit.

This suit therefore can proceed *only if* plaintiffs satisfy the APA conditions for review of administrative actions. As we demonstrate, they do not. Rather, "the plaintiffs have jumped the gun," and their case "must therefore be dismissed." *General Finance*, 700 F.2d at 372.

5

### B. Plaintiffs' Claims Fail The APA Prerequisites For Judicial Review

The APA permits judicial review of (1) "final agency action" (2) "for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *General Finance*, 700 F.2d at 371.[1] Both conditions must be satisfied; plaintiffs satisfy neither one.

The Seventh Circuit held in *General Finance* that a failure to meet APA requirements is a jurisdictional defect and that the dismissal "must" be "for lack of jurisdiction." 700 F.3d at 372. Other cases agree. *Wearly v. FTC*, 616 F.2d 662, 667-68 (3d Cir. 1980); *LabMD, Inc. v. FTC*, 776 F.3d 1275, 1277 (11th Cir. 2015); *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 n.1 (9th Cir. 1990). Recently, however, the Seventh Circuit has suggested that a challenge to nonfinal action is dismissable for failure to state a claim. *Dhakal v. Sessions*, 895 F.3d 532, 539-40 (7th Cir. 2018). This Court need not resolve which form of dismissal is most appropriate because here the result is the same either way: since plaintiffs have not met the APA requirements, their claims must be dismissed. *See id.* at 539 ("Finality" is "a necessary precondition to our ability to review agency action[.]").

#### 1. Plaintiffs do not challenge any "final" FTC action.

An agency action may be deemed "final" under the APA only when it satisfies two prerequisites: first, it must "mark the consummation of the agency's decisionmaking process"; second, it must "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 156, 177-78 (1997) (cleaned up). Both conditions "must be satisfied" or the challenged action is not reviewable. *Id* at 177.

Plaintiffs' complaint is more a general manifesto against the FTC than an attack on any specific – much less final – agency action. At most, plaintiffs challenge the FTC's decision to

---

[1] Plaintiffs do not challenge any "[a]gency action made reviewable by statute." 5 U.S.C. § 704.

pursue an enforcement case against them. *See, e.g.,* Compl. ¶ 20 (alleging that the FTC's "pyramid scheme allegations" "are legally and factually flawed"); ¶ 99 (asking for an injunction to stop the FTC "from attempting to enforce its current interpretation of the FTC Act regarding pyramid schemes"). However conceived, the charges cannot meet the *Bennett* test for finality.[2]

The Supreme Court's decision in *Standard Oil* and the cases that follow it confirm that nothing plaintiffs challenge constitutes "final agency action" under the APA. In *Standard Oil*, the FTC filed an administrative complaint against the plaintiffs, who responded by suing the agency for a declaration that the complaint was unlawful because the FTC lacked a valid "reason to believe" that an antitrust violation had occurred. 449 U.S. at 234-5.

The Supreme Court ordered the case dismissed on the ground that "[t]he Commission's issuance of its complaint was not 'final agency action.'" *Id*. at 239. It reasoned that a complaint represents merely "a threshold determination that further inquiry is warranted and that a complaint should initiate proceedings." *Id*. at 241. Moreover, the issuance of the complaint would have no legal force or consequences "other than the disruptions that accompany any . . . litigation." *Id*. at 243. The Court therefore precluded judicial review "before adjudication concludes," warning that review "should not be a means of turning prosecutor into defendant." *Id*.

The same logic applies to the Commission's decision to file a complaint in federal court. Like the issuance of an administrative complaint, the filing of an FTC complaint in court merely *initiates* the process of fixing the rights and obligations of the parties. The complaint itself has no legal effect; it neither forbids nor requires the defendants from doing anything at all. Only the

---

[2] Moreover, decisions such as when, how, and whether to enforce a statute are committed to the FTC's discretion, and not subject to review for that reason. *See* 15 U.S.C. §§ 45(b), 53(b); 5 U.S.C. § 701 (a)(2); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

7

court's final judgment would have that effect and thus mark the point when plaintiffs' rights or obligations can be said to "have been determined." *Bennett*, 520 U.S. at 178. Until then, *no* "legal consequences will flow" from the FTC's actions.[3] *Id.*

For those reasons, two courts recently dismissed similar suits against the FTC. *See Endo Pharms. Inc. v. FTC* ("*Endo*"), 345 F. Supp. 3d 554, 560 (E.D. Pa. 2018) (dismissing declaratory judgment action where FTC subsequently filed enforcement suit in district court); *Am. Fin. Benefits Ctr. v. FTC* ("*American Financial*"*)*, No. 17-04817, 2018 U.S. Dist. LEXIS 107004, at *21-22 (N.D. Cal. May 29, 2018) (same). As the *Endo* court explained, "determinations of rights and obligations and legal consequences will flow from the *court's and jury's* findings and decisions, not a decision by the FTC." 345 F. Supp. 3d at 560 (cleaned up). And the court in *American Financial* determined that "[t]he fact that the FTC elected to file a civil, as opposed to administrative complaint, is of no consequence." 2018 U.S. Dist. LEXIS 107004, at *21-22.

If filing an enforcement lawsuit could trigger judicial review, every company investigated and sued by the FTC could file its own preemptive suit against the agency, gutting the point of *Standard Oil* and creating an untenable system of duplicative parallel litigation. That explains why courts have consistently dismissed such suits against the FTC. *See, e.g., General Finance*, 700 F.2d at 368-72; *Wearly*, 616 F.2d at 667-68; *Ukiah Valley*, 911 F.2d at 263-64; *LabMD*, 776 F.3d at 1279; *Blue Ribbon Quality Meats, Inc. v. FTC*, 560 F.2d 874, 876-77 (8th Cir. 1977); *Jerome Milton, Inc. v. FTC*, 734 F. Supp. 1416, 1420-24 (N.D. Ill. 1990); *Direct Mktg. Concepts, Inc. v. FTC*, 581 F.Supp.2d 115, 117 (D. Mass. 2008). As the Seventh Circuit put it, "defendants

---

[3] To the extent plaintiffs challenge conduct leading up to the enforcement suit, that conduct is plainly not final. *See American Financial*, at *21 (an "investigation leading up to the decision to file a complaint does not constitute" final agency action).

must not be allowed to turn every case in which there is a defense into two cases." *Buntrock*, 347 F.3d at 997.

Plaintiffs' attempt to turn the FTC into the defendant does not fall within an exception to the finality requirement. Courts have allowed suit under the APA where non-final agency action mandates specific conduct and failure to obey will lead to serious adverse effects, such as severe or criminal penalties, that make the agency action effectively unreviewable. *See Abbott Labs. v. Gardner,* 387 U.S. 136 (1967). For example, in *Western Ill. Home Health Care v. Herman*, 150 F.3d 659 (7th Cir. 1998), the Seventh Circuit held that an agency's letter ruling was final under the APA where it warned that two companies "would be treated either as recidivists or as willful violators if they failed in the future to comply with the legal ruling contained in the letter." *Id*. at 663. By directing the conduct of the recipients and exposing them to new, "steeper penalties for future violations than they would otherwise have risked," the letter ruling had a direct, immediate, and concrete impact sufficient to make it "final for purposes of judicial review." *Id*.

Here, plaintiffs face no similar consequences. They merely must defend against the Commission's enforcement action – the sort of "burden" that the Supreme Court held does not trigger judicial review. *Standard Oil*, 449 U.S. at 242. Rather, such costs are simply "part of the social burden of living under government." *Id*. at 244. "If the cost, delay, and aggravation of litigation made an order final, the distinction between interlocutory and final decisions would collapse, and courts . . . would be deluged." *R.R. Donnelley & Sons Co. v. FTC*, 931 F.2d 430, 431-32 (7th Cir. 1991); *see also Ukiah Valley*, 911 F.2d at 264 (neither "mere 'possible financial loss'" nor the burden of having to "appear and defend themselves" warrant review). That is why *Standard Oil* "holds that expense does not finality make." *R.R. Donnelley*, 931 F.2d at 431.

9

### 2. Plaintiffs have another remedy for their claims.

Plaintiffs' complaint is also barred by the independent requirement that they be without any "other adequate remedy in a court." 5 U.S.C. § 704. In defending against the enforcement case, plaintiffs will be able to press every claim and defense they advance here. Indeed, in trying to dismiss that case, they have admitted that the two matters "involve[] the same illegal pyramid scheme claims" and are "duplicative." Nerium Mot. to Dismiss at 2, *FTC v. Neora*, No. 19-19699 (D.N.J. Dec. 11, 2019), NJ ECF No. 14. The remedies sought are available there as well. This case only wastes judicial and agency resources.

Two Seventh Circuit cases control here, both holding that an agency's enforcement suit provides a remedy that bars preemptive suits. In *General Finance*, the court held that the target of an FTC investigation had to wait until the FTC brought an enforcement suit, and could raise its arguments as defenses in that proceeding. 700 F.2d at 368-69, 371-72. In *Buntrock*, the court rejected the idea that the target of an administrative investigation could "derail" an enforcement suit by first "filing his own suit against the [agency]." 347 F.3d at 997. There was "no justification for Buntrock's suing the Commission" when he could raise his claims "as a defense in the SEC's suit," which therefore served as an "adequate remedy at law." *Id.* Because "*anything* Buntrock could achieve in [his] suit he could achieve by interposing an identical defense in the SEC's suit," Buntrock's suit had "no basis in law or common sense" and was "seriously frivolous." *Id*.

So too here. Plaintiffs admit that the "primary reason that [they] have chosen to file this action in this Court" is to avoid litigating the exact same issues in a venue chosen by the FTC. Compl. ¶ 42. It is nothing more than an attempt to deprive the FTC of its right to choose where

to file its enforcement suit.[4] *See Moog Indus., Inc. v. FTC*, 355 U.S. 411, 413-14 (1958). This case thus is the very attempt to "derail" an enforcement suit that the Seventh Circuit condemned in *Buntrock*. Yet, as that court has made clear, "*anything* [plaintiffs] could achieve in [their] suit [they] could achieve by interposing an identical defense" in the enforcement suit. *Buntrock*, 347 F.3d at 997; *General Finance*, 700 F.2d at 369.

\* \* \*

Plaintiffs disagree with the FTC's positions about the law governing pyramid schemes and whether Nerium's business practices are unlawful. But as courts have recognized for decades, a "claim that [the] FTC is taking a more rigorous view" of what the law requires "is not a basis for advance judicial consideration." *Floersheim*, 494 F.2d at 953-54. Rather, it is "the kind of point that can be raised when an enforcement sanction is pursued." *Id.* This case should be dismissed, and plaintiffs should make their arguments in New Jersey.

## II. PLAINTIFFS' CLAIMS FOR PRE-ENFORCEMENT REVIEW ARE NOT RIPE FOR JUDICIAL INTERVENTION

Plaintiffs' claims also fail because they are not ripe for judicial review. Ripeness doctrine ensures that courts avoid "premature adjudication" and do not "entangl[e] themselves in abstract disagreements," thereby "protect[ing] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way." *Abbott*, 387 U.S. at 148-49. Whether a pre-enforcement challenge to agency action is ripe turns on (1) the "fitness of the

---

[4] Plaintiffs decry the FTC's "apparent forum shopping efforts," Compl. ¶ 42, but they overlook the clear basis for venue there: two of the co-defendants are based in New Jersey. *See* FTC Compl. ¶¶ 7-8 (defendants Signum Biosciences, Inc. and Signum Nutralogix have principal places of business in New Jersey). Any valid forum non conveniens arguments can be considered by the New Jersey court in deciding plaintiffs' pending motion to dismiss or transfer.

issues for judicial decision" and (2) the "hardship to the parties of withholding court consideration." *Id.* at 149. This matter is unripe under both inquiries.

### A. The Issues Raised Here Are Not Fit For Judicial Decision.

An issue is fit for judicial decision if it (1) involves a "final agency action" under the APA and (2) presents a "purely legal" issue. *Id.* at 149. For the reasons discussed above, this case does not involve final agency action and fails the first prong of *Abbott* for that reason alone. But the claims are also unfit because they do not involve "purely legal" issues. While plaintiffs try to frame their claims as purely legal, they ultimately seek a declaration that Nerium "is not" and "has not been a pyramid scheme." Compl. ¶ 101 (3)-(4). Resolving that question necessarily involves examining facts that have not yet been fully developed. Indeed, the complaint itself states that "whether or not Nerium is a pyramid scheme is inherently a fact-specific inquiry focused on how Nerium's compensation plan operates in practice" and that "Nerium's actual data is central to the entire inquiry." Compl. ¶ 21. These issues are far from "purely legal," and they therefore are not yet fit for judicial decision. *Cf. Abbott*, 387 U.S. at 149 (noting "all parties agree[d] that the issue" was "purely legal").

### B. Raising Their Claims In New Jersey Will Cause Plaintiffs No Hardship.

Plaintiffs also cannot satisfy the second prong of *Abbott* because they will suffer no hardship from having to raise their arguments as defenses to the FTC's enforcement action. As discussed above, no FTC action requires plaintiffs to do or refrain from doing anything at all. The situation bears no resemblance to *Abbott*, which involved a challenge to rules that forced plaintiffs to choose between altering their business practices immediately or running the risk of "serious criminal and civil penalties." *Id*. at 153. The Court held that this was a sufficient hardship to justify pre-enforcement review of the regulations.

12

Here, by contrast, plaintiffs face no hardship, such as criminal or civil penalties, from litigating their issues as a defense to the enforcement case. At most, they bear "the burden of responding to the charges made against" them in the FTC's enforcement action. *Standard Oil*, 449 U.S. at 242-44. But as discussed at page 9 above, such burdens "are not the sort of loss that permits immediate judicial review." *CH2M Hill Cent. v. Herman*, 131 F.3d 1244, 1247 (7th Cir. 1997); *see also Abercrombie v. Office of Comptroller of Currency*, 833 F.2d 672, 677 (7th Cir. 1987) (even substantial "expense and inconvenience" do not "justify judicial intervention").

Plaintiffs are no different from the parties whose claims against the FTC were dismissed in *General Finance* and *Wearly*. In *General Finance*, the court held that any hardship from compliance with the FTC's subpoenas "is one the plaintiffs can prevent by defending successfully against the Commission's enforcement action." 700 F.2d at 371. Any impact in the meantime fell "far short" of the direct, immediate impact *Abbott* requires. *Id*. In *Wearly*, the Third Circuit emphasized that the plaintiff "was under no compulsion" to act "or suffer civil or criminal penalties as a result," but rather "was free to await enforcement proceedings" and raise his objections in that litigation. 616 F.2d at 667.

### III. IN ANY EVENT, THE COURT SHOULD DECLINE TO EXERCISE DECLARATORY JUDGMENT JURISDICTION, WHICH IS DISCRETIONARY.

Even if the Court could exercise jurisdiction here, it should not do so. The Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In this Circuit, courts consider factors such as: (1) "whether the judgment would settle the controversy"; (2) "whether the declaratory judgment would serve a useful purpose in clarifying the legal relations at issue"; (3) "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing'"; and (4) "whether there is an alternative remedy that is better or more

13

effective." *Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994). Applying similar factors, courts have declined to consider requests for declaratory relief that would preempt a government agency's enforcement proceeding, holding that the plaintiffs' arguments should instead be raised as defenses in the enforcement case. *See, e.g., Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 694 (D.C. Cir. 2015); *Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72, 76-80 (D.D.C. 2009); *Endo*, 345 F. Supp. 3d at 563-65. Here, all of the relevant factors point toward dismissal.

First, declaratory relief will not settle the entire dispute. The Supreme Court has held that a declaratory judgment claim should not be heard if it "would not resolve the entire case or controversy" but instead "would merely determine a collateral legal issue governing certain aspects of their pending or future suits." *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998).[5] "Such a suit" is an improper attempt "to gain a litigation advantage by obtaining an advance ruling on an affirmative defense." *Id.* That is the case here. The FTC's enforcement lawsuit alleges additional misconduct beyond what plaintiffs raise in this action. For example, the FTC alleges that Nerium made false earnings claims about its brand partners (Count II) and made false health and establishment claims about its EHT products (Counts III and IV). FTC Compl. ¶¶ 134-142. Plaintiffs seek no ruling as to those claims, challenging only the pyramid scheme aspects of the FTC's case – which go to their potential defense to only *one* of the five counts against them. *See id.* ¶¶ 132-33. Thus, "[e]ven if the Court provides the requested declaratory relief, the controversy between the parties is likely to continue, resulting in substantial inefficiencies for both the parties and the judicial system." *Swish Mktg.*, 669 F. Supp. 2d at 78.

---

[5] *Calderon* held that the plaintiff's claim thus was "not a justiciable case within the meaning of Article III." *Id.* at 749. This Court alternatively can dismiss plaintiffs' claims on that ground.

14

Second, allowing this case to proceed would confuse, not clarify, the legal relations at issue. As noted, this case would proceed concurrently with the New Jersey case, resulting in duplicative litigation and potentially conflicting judgments. This is not what the Declaratory Judgment Act was intended to promote. *See Wilton*, 515 U.S. at 277 (allowing a declaratory judgment action where parallel proceedings exist can be "indulging in gratuitous interference").

Third, plaintiffs are unquestionably involved in "procedural fencing." "The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing . . . to choose a forum." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987) (cleaned up). As discussed above, plaintiffs directly admit they are doing that very thing. *See supra* 10-11. Even without that admission, plaintiffs' race-to-the-courthouse filing after the FTC informed them of impending enforcement gives "the disfavored appearance that [they] hastily filed . . . to secure tactical leverage from proceedings in this forum." *POM Wonderful LLC v. FTC*, 894 F. Supp. 2d 40, 45 (D.D.C. 2012). "A suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed and the case allowed to proceed in the usual way." *Nucor*, 28 F.3d at 577 (cleaned up).

Fourth, as discussed (*supra* 10-11), plaintiffs have an obvious and less wasteful alternative remedy: asserting their claims as defenses in the enforcement action. *See General Finance*, 700 F.2d at 371; *Endo*, 345 F. Supp. 3d at 564-65.

## CONCLUSION

The Court should dismiss the complaint for lack of jurisdiction or failure to state a claim.

15

        Respectfully submitted,

        ALDEN F. ABBOTT
           *General Counsel*

        JOEL MARCUS
           *Deputy General Counsel*

December 23, 2019        /s/ *Mariel Goetz*
        MARIEL GOETZ
           *Attorney*

        FEDERAL TRADE COMMISSION
        600 Pennsylvania Avenue, N.W.
        Washington, D.C. 20580
        mgoetz@ftc.gov
        (202) 326-2763

        Of Counsel:
        DAVID O'TOOLE
        KATHARINE ROLLER
        GUY G. WARD
           *Attorneys*

        FEDERAL TRADE COMMISSION, MIDWEST REGION
        230 S. Dearborn, Suite 3030
        Chicago, Illinois 60604

## CERTIFICATE OF SERVICE

I certify that on December 23, 2019, I caused a copy of the foregoing to be electronically served on counsel of record for all parties via the Court's CM/ECF system.

| | |
|---|---|
| December 23, 2019 | /s/ Mariel Goetz<br>Mariel Goetz<br>Attorney<br>Federal Trade Commission<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20580<br>(202) 326-2763<br>mgoetz@ftc.gov |