**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NERIUM INTERNATIONAL, LLC N/K/A NEORA, LLC AND JEFFREY OLSON, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL TRADE COMMISSION, <br><br> Defendant. | Case No. 1:19-cv-7189 <br><br> Judge Sara J. Ellis |

**FTC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN
THE ALTERNATIVE, FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

Introduction ........................................................................................................................................1

I.    Plaintiffs Cannot Use The Declaratory Judgment Act To Circumvent The
APA's Requirements .................................................................................................................2

    A.    Plaintiffs' Approach Violates Controlling Precedent Holding That The
APA Is Their Only Route To Judicial Review .............................................................2

II.    Plaintiffs Concede That They Do Not Meet The APA Requirements ...................................8

    A.    Plaintiffs Admit That There Has Been No Final Agency Action .................................8

    B.    Plaintiffs Admit That The New Jersey Enforcement Action Provides
An Adequate Alternative Remedy ...............................................................................11

III.    Plaintiffs Fail To Rebut The FTC's Other Arguments For Dismissal...................................11

Conclusion .......................................................................................................................................13

## INTRODUCTION

We showed in our motion to dismiss that investigation targets cannot preempt FTC enforcement proceedings by filing declaratory judgment lawsuits, and that courts uniformly dismiss such maneuvers. In response, Plaintiffs fail to address the judicial decisions that set forth that rule. They do not even try to distinguish a controlling case that dismissed a similar suit, *General Finance v. FTC*, 700 F.2d 366 (7th Cir. 1983), where the Seventh Circuit held that parties "may not bypass" the requirements of the Administrative Procedure Act "simply by suing the agency in federal district court." *Id.* at 368. Nor do they distinguish the Supreme Court's decision in *FTC v. Standard Oil*, 449 U.S. 232 (1980), which held that a company could not use a declaratory judgment suit to challenge an FTC complaint, or the Seventh Circuit's decision in *Buntrock v. SEC*, 347 F.3d 995 (7th Cir. 2003), which dismissed a similar suit by the target of a SEC investigation. These authorities require dismissal of this case, which is nothing more than the sort of attempt to "turn[] prosecutor into defendant" that the Supreme Court warned against in *Standard Oil*. 449 U.S. at 243.

Plaintiffs concede they do not challenge any final agency action and that they can raise all their arguments in the pending FTC enforcement proceeding in New Jersey. They thus cannot satisfy the two APA prerequisites for suit. To avoid dismissal for this obvious failure, they ask the Court to adopt the novel and expansive approach that a company can use the Declaratory Judgment Act to sue an agency even where the APA's requirements are not met and the agency has an enforcement suit pending against the company for the same conduct. No court has adopted this unbounded principle, which cannot be squared with precedent and would work a sea change in federal administrative law.

Plaintiffs also have not shown that this case is ripe. They fail to address the hardship requirement at all, which is fatal to their case. And their feeble discussion of the discretionary declaratory judgment factors ignores Seventh Circuit precedent holding that declaratory suits are not favored when filed (like this lawsuit) to beat an opponent to the courthouse or when (like this lawsuit) they simply duplicate other litigation.

## I. PLAINTIFFS CANNOT USE THE DECLARATORY JUDGMENT ACT TO CIRCUMVENT THE APA'S REQUIREMENTS

Plaintiffs' brief hinges on the extraordinary claim that the Declaratory Judgment Act allows them to sue the FTC even if they cannot satisfy the APA's prerequisites to suit. By their logic, they can avoid the APA, "borrow" the FTC's cause of action, and "bring this action under the [Declaratory Judgment Act] and [the general federal question statute]." Plaintiffs' Response In Opposition To Defendant FTC's Motion ("Opp.") at 4-5. That approach would allow any target of an agency investigation to run to the court of its choosing before an enforcement action is filed, seeking a declaratory judgment that its actions do not violate the law or that the agency's legal position is wrong. Because the agency would have a federal cause of action in its enforcement suit, the argument goes, the company would, too, without regard to the APA.

No court has adopted Plaintiffs' argument, and for good reason: such a permissive approach would obliterate the careful constraints that Congress imposed through the APA and violate decades of precedent. It also would flood the courts with duplicative litigation.

### A. Plaintiffs' Approach Violates Controlling Precedent Holding That The APA Is Their Only Route To Judicial Review

Our motion to dismiss showed that the APA is the only route to judicial review in cases like this one. *See* FTC Memorandum In Support Of Its Motion To Dismiss ("Mot.") at 4-5. In

response, Plaintiffs try to reduce the APA to a statute that "merely creates a cause of action for judicial review" when its requirements happen to be met, but "does not *preclude* judicial review under other circumstances." Opp. 10. This position flies in the face of Supreme Court and Seventh Circuit precedent as well as common sense.

To begin with, Plaintiffs' "borrowing" theory fails because it reads a private right of action into the FTC Act which Congress did not create. *See, e.g.*, *Morrison v. Back Yard Burgers, Inc.*, 91 F.3d 1184, 1187 (8th Cir. 1996); *Goodloe v. Nat'l Wholesale Co.*, No. 03 C 7176, 2004 U.S. Dist. LEXIS 13630, at *35-36 (N.D. Ill. July 16, 2004) (FTC "has sole power to enforce the Act"). The Supreme Court has explained that "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Here, Congress authorized the FTC to sue private parties but did not create a cause of action allowing private parties to sue the FTC. The only cause of action relevant here that Congress created for suits against the government is the APA.

Beyond that, allowing plaintiffs to bring claims under the Declaratory Judgment Act without reference to the APA would vastly expand the scope of cases that could be brought against government agencies, contrary to Congress's clear intent to limit such claims to those involving "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Plaintiffs' approach would allow every enforcement suit to turn into two cases – one filed by the target, and one by the agency. Moreover, some targets might file a preemptive suit even though the agency may ultimately decide *not* to sue, burdening the courts with what amount to requests for advisory opinions. Allowing such suits also would interfere with attempts to resolve enforcement matters through settlement before litigation. Agencies might keep investigations

hidden and err on the side of filing enforcement suits lest they be forced to defend a duplicative declaratory suit in a forum of the target's choosing.

It is hardly a surprise that such a problematic approach is foreclosed by Supreme Court and Seventh Circuit decisions – in *Standard Oil*, *General Finance*, and *Buntrock* – not to mention numerous other cases rejecting it. *See* Mot. 8-9 (citing cases).

In *Standard Oil*, the Supreme Court held that declaratory judgment claims against the FTC were "subject to judicial review . . . *only* if the issuance of the complaint was 'final agency action' or otherwise was 'directly reviewable'" under the APA. *Standard Oil*, 449 U.S. at 238 (emphasis added). Plaintiffs acknowledge *Standard Oil*, Opp. 10-11, but do not address the Court's use of the word "only" – which establishes that the APA is the exclusive procedural vehicle for reviewing an FTC action in these circumstances. If Plaintiffs' theory were correct, *Standard Oil* would mean little – the plaintiffs could simply have sued under the Declaratory Judgment Act, and there would have been no need for the Court to decide whether there was "final agency action." (We address Plaintiffs' other, equally unsuccessful attempts to distinguish *Standard Oil* in discussing finality below at 8-10.)

Plaintiffs' approach also conflicts with *General Finance Corp. v. FTC*, 700 F.2d 366, 368 (7th Cir. 1983), a controlling case prominently discussed in the FTC's motion that they fail even to mention, much less distinguish. As discussed in the motion (Mot. 5-6, 8, 10-11, 13, 15), the Seventh Circuit held that a litigant "may not bypass the specific method that Congress has provided for reviewing adverse agency action simply by suing the agency in federal district court under 1331 or 1337." 700 F.2d at 368. Plaintiffs' failure to discuss *General Finance* concedes this point.

4

*Buntrock* provides the final nail in the coffin for Plaintiffs' argument. There, the Seventh Circuit held that an enforcement defendant was "not entitled to head [the enforcement action] off by putting the SEC and the courts to the burden of a separate lawsuit." 347 F.3d at 999-1000. The claim that the SEC investigation had been tainted supplied "no justification for . . . suing the Commission rather than urging the impropriety as a defense in the SEC's suit." *Id.* at 997. For that reason, the Court described the declaratory suit as having "no basis in law or common sense" and being "seriously frivolous." *Id.* Plaintiffs' meager attempt to distinguish *Buntrock* on the ground that the suit there sought a declaration "not on the merits but only to stay and dismiss SEC enforcement proceedings" is unpersuasive. Opp. 11. The decision's rationale – that there is no excuse for raising in a separate suit what can be raised in the enforcement action itself – applies in full force to the type of declaratory and injunctive relief sought here.

None of Plaintiffs' cases is to the contrary; not one suggested, much less held, that an enforcement target may use a declaratory suit against a federal agency to challenge the agency's positions. Many of them in fact *dismissed* declaratory suits for the same reasons the FTC urges upon this Court. For example, Plaintiffs cite *Dhakal v. Sessions*, 895 F.3d 532 (7th Cir. 2018), as support for the idea that the "APA does not *preclude* judicial review under other circumstances," i.e., where the APA requirements are not met. Opp. 10. But *Dhakal* makes the exact opposite point, holding that the declaratory suit had to be dismissed because the action the plaintiff challenged was "not a final agency action within the meaning of the APA." 895 F.3d at 540 (dismissing suit seeking declaration that asylum office's position was contrary to law). There was no other, "extra-APA" route to court.[1] *Id.* at 539-40.

---

[1] Courts have recognized an extremely narrow exception when agency conduct seriously harms a party and – critically – the party has no other means of judicial review (such as in an

5

Likewise, *Public Service Commission v. Wycoff Co.* and *General Motors Corp. v. Volpe*, cited at Opp. 4, both dismissed declaratory suits against government agencies. *Wycoff*, 344 U.S. 237, 246-47 (1952) (dismissing declaratory suit against Utah agency); *Volpe*, 457 F.2d 922, 923-24 (3rd Cir. 1972) (affirming dismissal of declaratory suit against the National Highway Safety Board where agency's separate enforcement suit was pending). Indeed, in *Wycoff* the Supreme Court noted that "it would not be tolerable" for parties to use the declaratory judgment procedure "to pre-empt and prejudge issues" committed to administrative agencies or "to forestall proceedings" – exactly what Plaintiffs attempt here. 344 U.S. at 241-42.

Plaintiffs get no help from *FTC v. Nash-Finch Co.*, 288 F.2d 407 (D.C. Cir. 1961) – an out-of-circuit decision cited only six times in the last six decades. That case has no bearing here because it did not involve an attempt to preempt an enforcement action. It had to do with a challenge to an FTC ruling affecting a company's ability to appeal from a prior cease and desist order. 288 F.2d at 409-10. It does not support the view that the Declaratory Judgment Act can be used to circumvent APA requirements. Indeed, the author of *Nash-Finch* made clear just one year later that the Declaratory Judgment Act does *not* create a freestanding cause of action, explaining that "if [an] agency's action is not final so as to be reviewable under the Administrative Procedure Act [a plaintiff] is not helped on the question of jurisdiction by the Declaratory Judgment Act . . . for that Act does not afford an independent basis for jurisdiction." *Cont'l Bank & Trust Co. v. Martin*, 303 F.2d 214, 215 (D.C. Cir. 1962) (footnote omitted). To

---

enforcement proceeding). *See, e.g., Jewel Cos. v. FTC*, 432 F.2d 1155, 1160 (7th Cir. 1970) (dismissing three claims because they could be reviewed in court upon completion of agency proceedings, but allowing one purely legal claim that would not be reviewable by a later court); *Trudeau v. FTC*, 456 F.3d 178, 190-91 (D.C. Cir. 2006) (describing "narrow exception" of "extremely limited scope"). That narrow exception does not apply here because, as Plaintiffs concede, *all* of their claims can be litigated in the New Jersey enforcement case.

the extent that *Nash-Finch* can be read otherwise, it is no longer good law in light of *Abbott Laboratories, Inc. v. Gardner*, 387 U.S. 136 (1967), which held that in assessing whether an agency action is ripe for review, courts must look to whether it is "final agency action" under the APA (*id.* at 149), and *Standard Oil*, 449 U.S. at 238, which held that declaratory judgment claims against the government are reviewable "only" if the APA requirements are satisfied.

Plaintiffs' remaining cases are similarly inapposite because (1) the disputes were between private parties;[2] (2) the government was acting in a private party-like capacity, not as an enforcer of federal laws;[3] or (3) a statute *specifically provided* that a district court may make an independent decision about a particular issue despite pending administrative proceedings.[4] Plaintiffs plainly have not met their burden to overcome the presumption against federal court jurisdiction, requiring dismissal. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994) (burden lies with party asserting jurisdiction).

---

[2] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) (licensee could seek a declaratory judgment without having to first violate the license agreement); *see Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014) (addressing who had burden of proving patent infringement in declaratory suit between two companies); *E. Edelmann & Co. v. Triple A. Specialty Co.*, 88 F.2d 852, 854 (7th Cir. 1937) (patent law dispute between two companies); *Milwaukee Gas Specialty Co. v. Mercoid Corp.*, 104 F.2d 589, 592 (7th Cir. 1939) (same); *Household Bank v. JFS Grp.*, 320 F.3d 1249, 1251 (11th Cir. 2003) (dispute between bank, customers, and tax preparer); *Superior Oil Co. v. Pioneer Corp.*, 706 F.2d 603, 607 (5th Cir. 1983) (dispute between two oil companies).

[3] *Thomas v. Shelton*, 740 F.2d 478, 481 (7th Cir. 1984) (as insurer of tort victim, United States had recovery rights under a federal statute); *see also Wisconsin v. Baker*, 698 F.2d 1323, 1328-29 (7th Cir. 1983) (dispute between state and group of Native Americans involving U.S. treaty, but U.S. not a party).

[4] *Klene v. Napolitano*, 697 F.3d 666, 667 (7th Cir. 2012) (immigration statute gave court power to make separate determination even where removal proceedings were ongoing); *Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1094 (9th Cir. 1985) (statute gave district courts jurisdiction over suits regarding certain reimbursements).

## II. PLAINTIFFS CONCEDE THAT THEY DO NOT MEET THE APA REQUIREMENTS

As the above discussion shows, the Court may hear this case only if Plaintiffs have a valid cause of action under the APA. That requires that the challenged agency conduct be "final agency action for which there is no other adequate remedy in a court."[5] 5 U.S.C. § 704. Plaintiffs confirm that this suit meets neither requirement.

### A. Plaintiffs Admit That There Has Been No Final Agency Action

Plaintiffs concede that their suit does not meet the "final agency action" requirement, noting that "filing a complaint in federal court is not 'agency action' at all" (Opp. 10), and acknowledging "the lack of agency action here" (Opp. 12 n. 7). At the same time, they suggest that initiating district court litigation, as the FTC has done here, is final in a way that initiating administrative proceedings is not.[6] Opp. 10-13. We therefore address the APA's final agency action requirement despite Plaintiffs' concession.

---

[5] Plaintiffs cite no statute that permits their suit and thus concede that they do not challenge agency action "made reviewable by statute," the other category for which the APA permits judicial review. *See* Opp. 9-10. Plaintiffs likewise have not asserted any claim regarding unreasonable agency delay (*compare* Opp. 12 n. 7 *with* Compl. at 54-58), which in any event could not succeed here, where the FTC was under no duty to act.

[6] Plaintiffs refer inconsistently to various FTC "actions": the FTC's supposed "stealth regulation" of Nerium "through a back channel strategy of 'fencing in'" (Opp. 1, 9), the FTC's "improperly imposing its own private agenda on Nerium" (Opp. 9), Nerium's "frustrating negotiations" with the agency during the investigation (Opp. 2), the FTC's threat of filing an enforcement lawsuit (Opp. 2, 9), and the filing of the New Jersey action (Opp. 3). The Complaint is similarly murky. *See* Mot. 6-7. What *is* clear, however, is that none of these alleged "actions" amounts to final agency action under the APA. And any "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action," and not before. 5 U.S.C. § 704. Many of Plaintiffs' complaints also involve matters committed to agency discretion and thus are unreviewable for that independent reason. *See* Mot. 7 n.2; *see also Jewel*, 432 F.2d at 1160 (noting "courts have no jurisdiction to decide . . . inherently prosecutorial decisions" like whether to issue a complaint).

As our motion demonstrated, "two conditions must be satisfied for agency action to be 'final'" for APA purposes: (1) "the action must mark the 'consummation' of the agency's decisionmaking process," and (2) it must "be one by which 'rights or obligations have been determined' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Plaintiffs' own cases reaffirm that both conditions must be satisfied. *See, e.g.*, *Dhakal*, 895 F.3d at 539-40. Here, neither is met.

As to the first condition, Plaintiffs cite no case in which filing a lawsuit has been held the "consummation" of an agency decisionmaking process, as opposed to the initiation of a litigation process.[7] While Plaintiffs note that *Standard Oil* involved an effort to end-run an administrative enforcement proceeding rather than district court litigation, they fail to explain why that procedural posture makes any legal difference in the finality analysis. A suit in district court under Section 13(b) of the FTC Act is based upon the same "reason to believe" determination at issue in *Standard Oil*.[8] *See* 449 U.S. at 241-42; *compare* 15 U.S.C. § 45(b) *with id.* § 53(b). Neither type of complaint has any legal force or consequences beyond imposing "the burden of responding to the charges made." *Standard Oil*, 449 U.S. at 242. Finally, and perhaps most importantly, allowing challenges to either type of complaint raises the same problem: that every

---

[7] Plaintiffs point to dicta in Judge Posner's *Buntrock* opinion, Opp. 11 (citing *Buntrock*, 347 F.3d at 998), but the court's holding – that an enforcement defendant cannot challenge an agency's decision to sue by filing a separate suit against it – did not distinguish between judicial and administrative suits. Nor did Judge Posner's prior opinion in *General Finance*, where the agency enforcement suit was in district court. 700 F.2d at 368.

[8] Plaintiffs' theory that the APA's requirements apply only to "FTC action under Section 5, not separate injunctive proceedings under Section 13(b)," Opp. 10, is doubly flawed. First, it misconstrues how the FTC Act works: a Section 13(b) enforcement suit filed in district court alleges violations of the FTC Act, including Section 5. *See* 15 U.S.C. § 53(b). Second, as another court recently recognized, excluding agency actions related to litigation in court from the APA's broad umbrella of "agency action" is "utterly without basis." *See Am. Fin. Benefits Ctr. v. FTC*, No. 17-04817, 2018 U.S. Dist. LEXIS 107004, at *14 (N.D. Cal. May 29, 2018).

enforcement defendant could file this sort of suit, which would "be a means of turning prosecutor into defendant before adjudication concludes." *Id.* at 243.

Plaintiffs' claim that the FTC's cases all involved "ongoing administrative adjudication proceedings" or "formal rulemaking and licensing by the FTC," Opp. 11, is flatly wrong. *General Finance*, the Seventh Circuit case Plaintiffs ignore, involved ongoing *judicial* proceedings – a subpoena enforcement action in federal district court. 700 F.2d at 367-68. So did *Wearly v. FTC*, 616 F.2d 662, 663 (3rd Cir. 1980) (subpoena enforcement action in district court), and numerous district court decisions dismissing suits against the FTC. *See, e.g., Am. Fin. Benefits Ctr. v. FTC* ("*American Financial*"), No. 17-04817, 2018 U.S. Dist. LEXIS 107004, at *21 (N.D. Cal. May 29, 2018) (enforcement action in district court); *Endo Pharms., Inc. v. FTC* ("*Endo*"), 345 F. Supp. 3d 554, 558 (E.D. Pa. 2018) (same); *Direct Mktg. Concepts, Inc. v. FTC*, 581 F. Supp. 2d 115, 116-17 (D. Mass. 2008) (same). As these courts have recognized, "[t]he fact that the FTC elected to file a civil, as opposed to administrative complaint, is of no consequence." *American Financial*, 2018 U.S. Dist. LEXIS 107004 at *21; *Endo*, 345 F. Supp. 3d at 560-61. Plaintiffs either ignore or misconstrue these authorities.

But even if initiation of a case equaled consummation of agency conduct, Plaintiffs clearly fail the second *Bennett* condition, which independently dooms their position. 520 U.S. at 178. The FTC's decision to file an enforcement lawsuit neither requires nor forbids any conduct by Plaintiffs, subjects them to no risk of penalties, determines no rights or obligations, and imposes no legal consequences. *See, e.g.*, *Standard Oil*, 449 U.S. at 243; *Endo*, 345 F. Supp. 3d at 560-61. At most, it requires them to defend the suit, but the law is clear that the burdens of litigation do not render an agency lawsuit final. *Standard Oil*, 449 U.S. at 242, 244; *R.R. Donnelly & Sons v. FTC*, 931 F.2d 430, 431 (7th Cir. 1991).

### B. Plaintiffs Admit That The New Jersey Enforcement Action Provides An Adequate Alternative Remedy

Even if this suit challenged final agency action, it still must be dismissed because Plaintiffs have an adequate alternative remedy in court, which bars judicial review under the APA's second requirement. 5 U.S.C. § 704. This reasoning, which applies identically to both administrative and district court litigation, is consistent with the general principle that "lack of an adequate remedy at law is a prerequisite to obtaining equitable relief." *Buntrock*, 347 F.3d at 997; *see also Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 694 (D.C. Cir. 2015) ("[I]t is well settled that a court may . . . dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere.") (cleaned up).

Plaintiffs admit that "there is an alternative remedy" in the New Jersey enforcement action and do not dispute that (1) they can raise all of their arguments in defending that suit, or (2) that the New Jersey court can deliver complete relief. Opp. 8-9. Their only comeback is the vague claim – supported by no authority – that this remedy would be somehow "inferior." Opp. 8. The contention appears to be that they would prefer to be in a different court, but that plainly is not enough to make an alternative remedy inadequate.[9]

### III. PLAINTIFFS FAIL TO REBUT THE FTC'S OTHER ARGUMENTS FOR DISMISSAL

We showed in our motion that this case should be dismissed for the additional reasons that it is not ripe and that the Court should decline to hear it, as the Court has discretion to do. Plaintiffs do not rebut those arguments.

---

[9] Whether the FTC could assert its claims as counterclaims in this suit (Opp. 6) is irrelevant, and Plaintiffs cite no case where a court has so required.

Regarding ripeness, they address only one of the two required prongs, fitness, effectively conceding that they will suffer no hardship in the absence of this Court's action. *See* Opp. 13-14. The matter therefore is not ripe and the Court need not proceed further. In any event, fitness requires both "final agency action" and "purely legal" issues, *Abbott*, 387 U.S. at 149, and neither is present here. *See infra* at 8-10; Opp. 14 (conceding some issues are factual).

Plaintiffs also have not rebutted the FTC's showing that this case is unworthy of the Court's discretionary consideration. In particular, courts should not entertain declaratory judgment cases filed only in order to gain procedural advantage. Plaintiffs admit (twice) that "virtually all witnesses" and relevant documents are located elsewhere (Opp. 3-4 n.3, 9 n.6) and that they filed here to take advantage of a recent Seventh Circuit decision adverse to the FTC (Opp. 2-3, 6-8). Plaintiffs hypothesize about what will happen in the New Jersey case (and when), and make much of the fact that this suit was "earlier-filed." Opp. 8-9. That is classic procedural fencing, and it is made more egregious by the fact (nowhere acknowledged) that the only reason they filed "first" is because FTC staff attorneys warned them in advance of the agency's upcoming suit. Dkt. 18 at 3, FTC Attorney Dec. ¶ 2.

In any event, the Seventh Circuit has "never laid down an inflexible rule that the prior filing controls," instead warning against the "unseemly race to the courthouse" that such a rule encourages – as this case proves. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980-81 (7th Cir. 2010) (cleaned up); *see also Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987). Courts dismiss first-filed cases where, as here, "one party files its lawsuit in anticipation of an impending suit by the opposing party," since "this type of behavior only exacerbates the risk of wasteful litigation." *Research Automation*, 626 F.3d at 980; *see also Morgan Drexen*, 785 F.3d at 697 (dismissing declaratory

12

suit where company engaged in procedural fencing by filing complaint despite awareness of likely enforcement action). Moreover, "where the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief," courts "ordinarily give priority to the coercive action, regardless of which case was filed first." *Research Automation*, 626 F.3d at 980. Plaintiffs completely ignore this binding precedent and identify no valid reason for the case to proceed.

## CONCLUSION

The Court should dismiss the complaint for lack of jurisdiction or failure to state a claim.

February 20, 2020

Respectfully submitted,

ALDEN F. ABBOTT
   *General Counsel*

JOEL MARCUS
   *Deputy General Counsel*

/s/ *Mariel Goetz*
MARIEL GOETZ
   *Attorney*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
mgoetz@ftc.gov
(202) 326-2763

Of Counsel:
DAVID O'TOOLE
KATHARINE ROLLER
GUY G. WARD
   *Attorneys*

FEDERAL TRADE COMMISSION, MIDWEST REGION
230 S. Dearborn, Suite 3030
Chicago, Illinois 60604

**CERTIFICATE OF SERVICE**

I certify that on February 20, 2020, I caused a copy of the foregoing to be electronically served on counsel of record for all parties via the Court's CM/ECF system.

| | |
|---|---|
| February 20, 2020 | /s/ Mariel Goetz<br>Mariel Goetz<br>Attorney<br>Federal Trade Commission<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20580<br>(202) 326-2763<br>mgoetz@ftc.gov |