UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NERIUM INTERNATIONAL, LLC N/K/A NEORA, LLC and JEFFREY OLSON, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL TRADE COMMISSION, <br><br> Defendant. | No. 19 C 7189 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Following the Federal Trade Commission's ("FTC") investigation and subsequent threats to file an enforcement action, Plaintiff Nerium International, LLC n/k/a Neora, LLC and its owner and CEO, Plaintiff Jeffrey Olson (collectively "Plaintiffs") filed this lawsuit against the FTC seeking declaratory relief. The FTC filed an enforcement action in the District of New Jersey on the same day and later moved to dismiss the action in this district for lack of subject matter jurisdiction. Because the claims presented are not ripe for judicial resolution and Plaintiffs can defend themselves in the enforcement action,[1] the Court grants the FTC's motion to dismiss [18].

## BACKGROUND[2]

Nerium is a multi-level marketing company ("MLM") that "use[s] network marketing to recruit and build out independent representative sales teams." Doc. 1 ¶ 9. The FTC is an

---

[1] Although the FTC initially filed an enforcement action in the United States District Court for the District of New Jersey, that court recently transferred the case to the United States District Court for the Northern District of Texas. *See* Doc. 33 at 5–6.

[2] The facts in the background section are taken from the complaint and are presumed true for the purpose of resolving the FTC's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

independent agency of the United States government created by statute. The Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 41 *et seq.*, prohibits "[u]nfair methods of competition" and "unfair or deceptive acts or practices" in or affecting commerce. 15 U.S.C. § 45(a)(1). The FTCA empowers the FTC to enforce its provisions by filing either an administrative or civil complaint. *Id.* §§ 45(a) & (b), 53(b).

On June 21, 2016, the FTC initiated an investigation of Nerium by issuing a civil investigation demand. Its stated purpose was to investigate whether Nerium "engaged or [is] engaging in unfair or deceptive acts or practices or in the making of false advertisements" in violation of sections 5 and 12 of the FTCA. Doc. 1 ¶ 19. Nerium produced documents in response, including copies of its internal databases through 2017 and a corresponding economic analysis. Nerium claims that the FTC's allegations are legally and factually flawed. Nerium alleges that by investigating Nerium, the FTC "seeks to preclude Nerium, and seemingly numerous other entities, from being able to operate as an MLM and indeed improperly threaten Nerium's existence as a company." *Id.* ¶ 20. Beginning in July 2018, the FTC threatened to sue Plaintiffs in this district under Section 13(b) of the FTCA. The FTC claimed that it had an economic analysis establishing that Nerium has been or currently is an illegal pyramid scheme under the FTCA. However, the FTC refused to share this analysis.

Plaintiffs' complaint primarily centers on what it describes as the FTC's "fencing in" tactic. Plaintiffs allege that the FTC has advocated for the increased use of threatening lawsuits based on a new interpretation of its guidance if a target of an investigation does not agree to the FTC's demand that it be "fenced in" by agreeing to business practices beyond what the law requires. That is, the FTC targets a company for investigation, insists that the investigation confirmed the company is operating as an illegal pyramid scheme, and threatens the company by

indicating it will seek an enormous monetary judgment if the company does not change its business practices. Plaintiffs claim that the FTC's "fencing in" tactic is not legal because it is based on a guidance document, and President Trump has issued two executive orders prohibiting government agencies from using guidance to change the law. *Id.* at ¶ 51. In summary, Plaintiffs claim that the FTC is attempting to outlaw MLMs by: (1) refusing to share economic analysis that demonstrates the target is a pyramid scheme; (2) "demanding the elimination of paying of compensation to those in the up line of the person actually making the sale and perhaps only one person above the seller; and (3) demanding the prohibition of consideration of a business participant's own purchases as end use consumption." *Id.* ¶ 55. Plaintiffs claim that the FTC publicly announced its new interpretation of how MLMs are considered pyramid schemes through a web page on October 2, 2019. Plaintiffs dispute the FTC's changed interpretation of a "pyramid scheme" and the informal method by which the FTC developed this interpretation.

      Plaintiffs seek a judgment construing the provisions of the FTCA, as well as declaring and clarifying the rights and obligations of the parties under the FTCA. Plaintiffs make ten specific requests for declarations, including that the FTC may only obtain temporary, preliminary, and/or permanent injunctive relief when a target is violating or about to violate a provision enforced by the FTC. *Id.* ¶ 97(1–2). Plaintiffs further seek declarations as to what the FTC must consider when reviewing MLMs for possible illegal pyramid activities. *Id.* ¶ 97(4–5). Plaintiffs also ask the Court to enjoin the FTC from attempting to enforce its current interpretation of the FTCA regarding pyramid schemes. More specific to this case, Plaintiffs request declarations that Nerium is not and has not been a pyramid scheme. *Id.* ¶ 101(3–4). Plaintiffs filed an action in this Court on November 1, 2019. Later that day, the FTC filed an enforcement action in the District of New Jersey (the "enforcement action") pursuant to 15

U.S.C. § 53(b). *See FTC v. Neora*, No. 19-19699 (D.N.J. Nov. 1, 2019). In that complaint, the FTC named Plaintiffs, as well as Signum Biosciences and Signum Nutralogix, as the defendants.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See id.*; *United Phosphorus*, 322 F.3d at 946. If, however, the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. *See Apex Digital*, 572 F.3d at 443–44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a

claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

The FTC advances two arguments in support of its motion to dismiss. First, the FTC contends that dismissal is proper because the only possible source of a cause of action for Plaintiffs is the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and Plaintiffs cannot satisfy the APA's requirements. Second, the FTC argues that the Court should dismiss this action because Plaintiffs' claims are not ripe for consideration and therefore the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, provides no basis for jurisdiction.

"Federal courts are courts of limited jurisdiction," *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 845 (7th Cir. 2015), and "possess only that power authorized by Constitution and statute," *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 468 (7th Cir. 2015). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Here, Plaintiffs invoke jurisdiction pursuant to the DJA and the general federal question statute, 28 U.S.C. § 1331. However, the DJA does not provide an independent basis for jurisdiction. *See Manley v. Law*, 889 F.3d 885, 893 (7th Cir. 2018) ("The [DJA] provides no independent source of federal subject-matter jurisdiction." (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950))), *reh'g denied* (June 8, 2018). The FTC argues that the APA provides the only possible basis for federal jurisdiction, whereas Plaintiffs

5

suggest that because the FTC threatened litigation under the FTCA, they can "borrow" this federal cause of action. *See* Doc. 25 at 6; Doc. 1 ¶ 41. Therefore, the Court will proceed to evaluate whether Plaintiffs state a claim under the APA and whether the Court can exercise jurisdiction under the DJA if the FTCA provides a federal basis for jurisdiction.

**I.       The APA**

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. General federal question jurisdiction exists over such claims. *See Dhakal v. Sessions*, 895 F.3d 532, 538 (7th Cir. 2018). However, the APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see Dhakal*, 895 F.3d at 539. The FTC argues that there is no basis for judicial review here because Plaintiffs cannot satisfy either requirement.

As an initial matter, Plaintiffs attempt to avoid the APA's limitations by arguing that: (1) "the APA merely creates a cause of action for judicial review under certain circumstances" and "does not *preclude* judicial review in other circumstances;" and (2) an enforcement proceeding is not agency action and therefore falls outside the APA. Doc. 25 at 12. However, the APA provides the only basis by which a party may challenge an agency's action. It is a ceiling, not a floor. *See Home Builders Ass'n of Greater Chicago v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 614 (7th Cir. 2003) (the APA permits judicial review "only" over final agency action without a legal remedy in a court); *Abbs v. Sullivan*, 963 F.2d 918, 925–26 (7th Cir. 1992) ("The statute that authorizes judicial review of federal agency orders not made reviewable by a specific statute confines that review jurisdiction to 'final agency action for which there is no other adequate remedy in a court.'" (quoting 5 U.S.C. § 704)); *Gen. Fin. Corp. v. F.T.C.*, 700

F.2d 366, 372 (7th Cir. 1983) ("The jurisdiction of the federal courts to review administrative action is codified in the Administrative Procedure Act."). Congress limited judicial review of agency action, and Plaintiffs cannot avoid these limits by attempting to plead around the APA. *Gen. Fin.*, 700 F.2d at 368 ("[Plaintiffs] may not bypass the specific method that Congress has provided for reviewing adverse agency action simply by suing the agency in federal district court under 1331 or 1337; the specific statutory method, if adequate, is exclusive." (citing 5 U.S.C. §§ 703, 704)). Additionally, the FTC's initiation of an enforcement action, through an administrative proceeding or civil action, is agency action for purposes of the APA. *See F.T.C. v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 771 (7th Cir. 2019) (the FTC has various tools to enforce the FTCA, including pursuit of an injunction pursuant to 15 U.S.C. § 53); *Am. Fin. Benefits Ctr. v. F.T.C.*, No. 17-04817, 2018 WL 3203391, at *6 (N.D. Cal. May 29, 2018) (statutory grant of authority to the FTC includes initiation of enforcement proceeding and therefore such initiation qualifies as agency action to which the APA applies); *see F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 238 n.7 (1980) (FTC's issuance of complaint is agency action).

    A.    **Final Agency Action**

There are two requirements for an agency's action to be considered final. "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, --- U.S. ---, 136 S. Ct. 1807, 1813 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). A final agency action ordinarily "means a final order

imposing some sort of sanction" and "emphatically does not mean the issuance of the administrative complaint, kicking off the administrative proceeding." *Abbs*, 963 F.2d at 926.

Here, Plaintiffs' response brief does not identify a final agency action, and it does not appear that one exists. Plaintiffs' complaint broadly challenges the FTC's threats to bring an enforcement proceeding and criticizes the burdens of investigation. *See, e.g.*, Doc. 1 ¶¶ 20, 82, 97. However an agency's investigatory activity is not final agency action. *Beam v. Gonzales*, 548 F. Supp. 2d 596, 605 (N.D. Ill. 2008) ("[T]he decision to investigate is preliminary and not subject to judicial review." (citing *Dentistry v. Corrigan*, 347 F.3d 57, 69 (3d Cir. 2003))); *Genendo Pharm. N.V. v. Thompson*, 308 F. Supp. 2d 881, 884 (N.D. Ill. 2003) ("It is well-settled, however, that an agency's investigatory activity does not constitute final agency action." (citing *Reliable Automatic Sprinkler Co. v. CPSC*, 324 F.3d 726, 731–32 (D.C. Cir. 2003))).

Additionally, the FTC's initiation of a civil enforcement action does not constitute final agency action. Filing an enforcement action does not determine the rights or obligations of the involved parties. *See Endo Pharm. Inc. v. F.T.C.*, 345 F. Supp. 3d 554, 560 (E.D. Pa. 2018) (collecting cases where filing of enforcement action did not constitute final action); *Am. Fin. Benefits Ctr.*, 2018 WL 3203391, at *7 (no rights and obligations determined by FTC investigation, decision to file complaint, and filing of a complaint). Instead, a court makes those determinations as litigation proceeds. The Supreme Court's holding that the FTC's issuance of a complaint in an administrative proceeding does not qualify as final agency action supports this conclusion. *See Standard Oil*, 449 U.S. at 246. There, the Court explained that the issuance of a complaint had no legal force nor practical effect on the company's daily business. *Id.* at 243. The FTC's issuance of the complaint reflected "a threshold determination that further inquiry is warranted and that a complaint should initiate proceedings." *Id.* at 241. The same is true here;

8

there is no meaningful distinction between filing an administrative or civil complaint for purposes of assessing final agency action. *Gen. Fin.*, 700 F.2d at 368 (target of FTC investigation may not sue to enjoin investigation but must wait until the FTC "sues to enforce a subpoena or other compulsory process in aid of the investigation" because Congress prescribed this method of judicial review); *Endo*, 345 F. Supp. 2d at 360 (FTC filing civil enforcement action not final agency action); *Am. Fin. Benefits Ctr.*, 2018 WL 3203391, at *8 (same); *cf. Buntrock v. S.E.C.*, 347 F.3d 995, 998 (7th Cir. 2003) ( "The SEC's decision to sue is not properly before us, but not because of lack of finality; rather, because [the plaintiff] has challenged that decision in an improper manner, by suing the SEC."). As a final note, to the extent that Plaintiffs challenge the FTC's prior "threats" to bring an enforcement action before filing the enforcement action, such actions are not reviewable. An agency's decision not to pursue enforcement action is presumptively not reviewable. *See Heckler v. Chaney*, 470 U.S. 821, 832 (1985); *Menominee Indian Tribe of Wis. v. Envtl. Prot. Agency*, 947 F.3d 1065, 1072 (7th Cir. 2020) ("Discretionary enforcement decisions reflect one category of agency decisions that the Supreme Court has identified as unsuitable for judicial review."), *reh'g denied* (May 8, 2020). Therefore, there is no final agency action.

    **B.**   **Availability of Another Adequate Remedy**

    Additionally, Plaintiffs undoubtedly have an adequate remedy in the enforcement action. Plaintiffs can raise the same arguments they assert here as defenses in that action. *See Buntrock*, 347 F.3d at 998 (concluding that the plaintiff's complaint was properly dismissed and explaining that the plaintiff could raise its complaint against the SEC as a defense to the SEC's suit); *Gen. Finance*, 700 F.2d at 369 (the plaintiff could receive a judicial determination of the lawfulness of the FTC investigation, thus, judicial review in a suit to enjoin the investigation would waste

judicial resources). Moreover, the resolution that Plaintiffs seek—that Nerium is not and never has been a pyramid scheme—is available in the enforcement action. Accordingly, Plaintiffs have not stated a claim under the APA.[3]

## II.  The Declaratory Judgment Act

Plaintiffs argue that because the FTC threatened action under the FTCA, they may also rely on the FTCA to invoke the DJA. The FTC replies that Plaintiffs cannot use the DJA to circumvent the APA's requirements, Congress only empowered the FTC to bring actions under the FTCA, and even if the FTCA provides a basis for jurisdiction, the Court cannot exercise jurisdiction because the issues are not ripe. The Court agrees that regardless of whether Plaintiffs may borrow the FTC's cause of action to provide a basis for federal jurisdiction, it cannot exercise jurisdiction pursuant to the DJA because the issues are not ripe. *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019) (actions under DJA are only ripe when there is a substantial controversy); *Gen. Fin.*, 700 F.2d at 372 ("If a review proceeding is not authorized by section 10(c) [of the APA], because it is premature, general jurisdictional statutes such as 28 U.S.C. §§ 1331 and 1337 cannot be used to confer jurisdiction."); *Endo*, 345 F. Supp. 3d at 561–62 (declining to exercise jurisdiction because the plaintiffs sought "extra-enforcement" review of the FTC's actions outside of the FTCA's review procedure and the claims were not ripe).

The DJA specifies that "[i]n a *case of actual controversy* within its jurisdiction," a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis

---

[3] Recent Seventh Circuit precedent has explained that the elements of a claim under the APA are not jurisdictional. *Dhakal*, 895 F.3d at 538 n.9 ("Because the APA is not a jurisdiction-conferring statute, [the] elements of a claim under the APA," including exhaustion, "are not jurisdictional." (quoting *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 424 (6th Cir. 2016))); *Matushkina v. Nielsen*, 877 F.3d 289, 292 n.1 (7th Cir. 2017) (section 704 is not jurisdictional).

10

added). Here, the FTC challenges whether an actual controversy exists under the ripeness doctrine, which also implicates jurisdiction under Article III. *See Amling*, 943 F.3d at 377 (Article III's limit of federal jurisdiction to "cases" and "controversies" is coextensive with the DJA's requirement that there be "a case of actual controversy"). And even if the issues are ripe, the DJA does not create a right to relief but instead provides the Court with discretion to exercise jurisdiction. *See Haze v. Kubicek*, 880 F.3d 946, 951 (7th Cir. 2018) (The DJA "says only that the court '*may* declare the rights and other legal relations of any interested party, not that it *must* do so.'" (citation omitted)). The DJA accords federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007)). Therefore, even if Plaintiffs may "borrow" the federal basis for the FTC's threatened cause of action, the Court must decide whether an actual controversy exists for purposes of the DJA, and if so, whether to exercise jurisdiction.

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)). The limits of Article III and prudential concerns inform the ripeness doctrine. *See id.* "The central perception is that courts should not render decisions absent a genuine need to resolve a real dispute." *Novae Underwriting, Ltd. v. Cunningham Lindsey Claims Mgmt., Inc.*, No. 07 C 5278, 2008 WL 4542988, at *2 (N.D. Ill. Apr. 1, 2008) (quoting 13A Charles Alan Wright *et al.*, Federal Practice and Procedure § 3532.1

11

(2d ed.1984)). To determine whether an administrative action is ripe for judicial review, the Court evaluates: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808 (citing *Abbott*, 387 U.S. at 149).

First, the issues are not fit for judicial resolution. An issue is fit for judicial resolution if it involves a "final agency action" and presents a "purely legal" issue. *Abbott*, 387 U.S. at 149. As discussed, there is no final agency action. Moreover, Plaintiffs do not raise a purely legal issue. Instead, Plaintiffs' requests for relief include a declaration that Nerium neither is nor was a pyramid scheme, which involves a fact-based inquiry. Doc. 1 ¶ 101. Plaintiffs acknowledge as much in their complaint, which states "whether or not Nerium is a pyramid scheme is inherently a fact-specific inquiry." *Id.* at ¶ 21. Plaintiffs suggest that regardless, the Court should make a fact-based inquiry because there is evidence to make this determination. Plaintiffs cite no law in support of this proposition, however, and relevant case law from this circuit indicates that only purely legal questions are fit. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 586 (7th Cir. 2011) (case presumptively fit for review because issues were "purely legal"); *Wis. Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011) ("Claims that present purely legal issues are normally fit for judicial decision."); Ripeness for review of purely legal issue, 2 Fed. Proc., L. Ed. § 2:320 ("[T]he issues in a case are not purely legal by reason of the fact that the factual record supporting the agency action is complete."); *cf. In re: TelexFree Sec. Litig.*, 54 F. Supp. 3d 1353 (J.P.M.L. 2014) (whether companies operated pyramid scheme involved factual questions).

Second, Plaintiffs fail to identify any cognizable hardship, and the Court finds that none exist. "[T]he cost and inconvenience of defending [oneself] is not alone sufficient to justify

judicial intervention in the administrative process." *Davis v. U.S. Dep't of Hous. & Urban Dev.*, No. 95–2586, 1996 WL 467650, at *2 (7th Cir. 1996) (quoting *Borden, Inc. v. F.T.C.*, 495 F.2d 785, 789 (7th Cir. 1974)); *Gen. Fin.*, 700 F.2d at 371 ("The impact of the informal investigation falls far short of that of the regulation challenged in *Abbott Laboratories*, which required 'an immediate significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance.'" (quoting 387 U.S. at 153)). Further, as discussed, Plaintiffs will have a direct opportunity to raise their arguments against the FTC in the enforcement action. This opportunity is critical where Congress provided the FTC with a specific method by which to bring enforcement actions and Plaintiffs sought to circumvent such method by filing this action. *Gen. Fin.*, 700 F.2d at 371 (plaintiffs have an alternative remedy in the FTC enforcement action by successfully defending themselves and therefore cannot rely on general jurisdictional statutes); *Endo*, 345 F. Supp. 3d at 562 (Congress provided means for judicial review of the FTC's determination that a company violated the FTCA and the DJA may not be used to circumvent this); *cf. Buntrock*, 347 F.3d at 997 ("[D]efendants must not be allowed to turn every case in which there is a defense into two cases."). Accordingly, Plaintiffs' complaint is not ripe for judicial review and the Court dismisses the complaint for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court grants the FTC's motion to dismiss [18]. The Court dismisses Plaintiffs' complaint without prejudice for lack of subject matter jurisdiction.

Dated: August 31, 2020

SARA L. ELLIS
United States District Judge

13